**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

RICHARD A. BESEAU,

Plaintiff,

vs. **Case No. 05-2162**

FIRE DISTRICT NO. 1 OF
JOHNSON COUNTY, KANSAS,

Defendant.

---

**MEMORANDUM AND ORDER**

This is an employment discrimination case brought pursuant to the provisions of Title VII, 42 U.S.C. § 2000e et seq. Plaintiff was employed as a firefighter by defendant. Plaintiff claims that he was subjected to sexual harassment by his supervisor, who is also a male. Plaintiff asserts that the alleged harassment caused him to resign in what was in effect a constructive discharge. This case is now before the court upon defendant's motion for summary judgment.

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). In approaching summary judgment motions, the court views the record in a light most favorable to the nonmovant. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment

in the mere hope that something may turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

The following facts appear to be undisputed for the purposes of the motion before the court.

Plaintiff accepted a job as a full-time firefighter for defendant on or about March 27, 2004. For approximately a year before that date, plaintiff had served as an unpaid volunteer firefighter for defendant. Plaintiff first reported to work as a paid employee on or about April 12, 2004. Plaintiff's immediate supervisor was Captain Kevin Ritter.

When plaintiff was a volunteer firefighter, he worked on Captain Ritter's shift 8 to 10 times and did not have any problems or concerns with Ritter. He observed at that time that it was common for Ritter to use profane language, including crude, sexual jokes. Ritter did not direct any offensive comments or conduct toward plaintiff while plaintiff was a volunteer firefighter.

Firefighters for defendant are required to work 24-hour shifts, which means that firefighters must train together, fight fires together, eat meals together, watch television or engage in other entertainment together, and sleep in the same room together at night. Plaintiff's typical work schedule required him to work three 24-hour shifts every other day, followed by four days off.

During the time plaintiff worked for defendant, all of the paid firefighters were male. Of the approximately 35 volunteer

firefighters, one was female. No women were assigned to Ritter's shift when plaintiff was employed there. It was common in the privacy of the station for firefighters to engage in cursing, jokes and sexual innuendo.

On plaintiff's second 24-hour shift after becoming a full-time firefighter, Captain Ritter jumped into plaintiff's bed and acted like he was having sex with someone. This lasted for ten to 15 seconds. Plaintiff did not report the incident to anyone.

On May 11, 2004 Ritter asked plaintiff if he was right or left-handed. When plaintiff responded that he was right-handed, Ritter responded that plaintiff must "work out with your right hand." By "work out" Ritter meant "masturbate," and he made motions with his hand to simulate masturbation. Plaintiff did not report this incident to anyone.

On May 27, 2004, upon hearing plaintiff comment that he attended St. Thomas Aquinas High School, Ritter stated that he used to have sex with a lot of Catholic girls, especially ones from St. Thomas Aquinas. When a commercial was shown on television that depicted a girl in a Catholic school uniform, Ritter asked plaintiff, "is that what Catholic girls at Aquinas would wear?"

On June 8, 2004 Ritter told plaintiff, "You think about me when having sex with your wife, don't you. I will be on your shoulder when you're having sex with your wife, I'll be telling you to go right or left."

On June 14, 2004 Ritter, while laughing, touched plaintiff on the shoulder in a "seductive" manner by placing his hand on plaintiff's shoulder and moving his hand in a circular motion. Later the same day, plaintiff indicated that he had to go to the restroom. Ritter asked if plaintiff needed to "work out" as a result of Ritter having touched plaintiff's shoulder. Ritter gestured like he was masturbating as he said this.

On June 16, 2004 plaintiff and Captain Ritter took a tour of a jail and a sheriff's department. An inmate or some inmates said "look at that big son of a bitch" with reference to plaintiff. Ritter heard the comments and said, "I think the inmates like you. We should lock you in the cell with them so they can have sex with you." Ritter also told a sheriff's deputy that plaintiff "works out" when he goes home, while making a gesture to simulate masturbation. Ritter touched plaintiff on the shoulder twice on June 16, 2004 and told plaintiff "it's not harassment if you ask for it."

Plaintiff is 6'2" tall and weighs approximately 315 pounds with a chest measurement of about 52". Ritter is much smaller than plaintiff.

On June 17, 2004 Ritter told another firefighter to touch plaintiff because plaintiff liked to be touched.

On June 21, 2004 plaintiff was using a screw driver when Ritter said, "look at Tony, he's holding the handle as though he's

working out," and then touched plaintiff on the back. Again, Ritter was referring to masturbation.

On June 22, 2004 Ritter told another firefighter that plaintiff "still has trouble whacking his peter."

On June 23, 2004 Ritter touched plaintiff's shoulder in a seductive manner and said "I am a touchy-feely type of guy." Plaintiff told Ritter, "Please don't touch me, I don't like being touched." On the same day, Ritter told a volunteer firefighter to touch plaintiff because plaintiff liked to be touched. One time when Ritter touched plaintiff's shoulder he asked, "What's wrong, are you homophobic?"

On June 30, 2004 Ritter asked plaintiff whether he had had sex with his wife on his four days off. Plaintiff responded that it was none of his business.

On one occasion, Ritter pulled out a ham that was just purchased at a grocery store and, in the presence of other firefighters, said to plaintiff, "Hey Tony, look at this big piece of meat." On other occasions, Ritter said to plaintiff, "If you ever get scared at night, you can come and cuddle with me in bed." Plaintiff never heard Ritter make the same comment to anyone else.

These are the sexual comments that Ritter allegedly made to plaintiff while plaintiff was employed as a firefighter by defendant. Ritter also made numerous nonsexual comments to plaintiff which plaintiff thought were intended to "pick on"

plaintiff. Sometimes these comments were critical of plaintiff's job performance. Some of the comments indicated that Ritter enjoyed exercising his authority in a way that aggravated employees, perhaps for the purpose of "toughening" them. In some of the comments, Ritter acknowledged he was picking on plaintiff or acting like a drill sergeant toward plaintiff.

Twice Ritter came up behind plaintiff and screamed in order to scare plaintiff.

Oftentimes, plaintiff would become very emotional and cry for periods as long as twenty minutes before leaving for work because he was fearful of the treatment he would receive from Captain Ritter.

There is no evidence in the record that Ritter or plaintiff is homosexual. Both men are married to women. Ritter has two children. Plaintiff has speculated that Ritter may have been coming on to him or probably was. Plaintiff has also stated numerous times that he didn't know what Ritter's motivation was.

Plaintiff resigned from his job with defendant. He told the Fire Department Chief that he couldn't take anymore of Captain Ritter. This was plaintiff's first complaint about Ritter to a person in authority over Ritter, even though the Fire Department Chief and the Deputy Chief had offices in the same fire station where plaintiff was assigned to work. Plaintiff typically walked past their offices during his employment with defendant.

When plaintiff first announced that he would resign, the Chief asked plaintiff to take a few days off with pay to think about it and that an investigation would be conducted. Plaintiff returned a few days later and reaffirmed his decision to resign. The Chief also offered to place plaintiff on a different shift with a different supervisor. Plaintiff does not recall being offered a transfer, but has admitted that such an offer would not have affected his decision to resign.

During his employment, plaintiff did not see Ritter treat other firefighters, male or female, like he treated plaintiff.

SEXUAL HARASSMENT

Plaintiff claims that the sex discrimination proscriptions in Title VII were violated during his employment because he was subjected to sexual harassment in the form of a hostile work environment. To establish that a sexually hostile work environment existed, plaintiff must prove the following elements: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) the severity or pervasiveness of the harassment altered a term, condition or privilege of plaintiff's employment and created an abusive working environment. Dick v. Phone Directories Co., Inc., 397 F.3d 1256, 1262-63 (10th Cir. 2005) (citing Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797, 798 (10th Cir. 1997)). The last two elements have been placed at issue by defendant's summary

judgment motion.

Discrimination based on sex

The Supreme Court has held that Title VII allows claims for same-sex sexual harassment. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998). In Oncale, the Court listed three possible ways to prove in a same-sex harassment case that the conduct satisfied the statutory requirement that it be "discrimina[tion] . . . because of . . . sex." Id. at 81. First, a plaintiff could show that the harasser was homosexual and motivated by sexual desire. Id. at 80. Second, a plaintiff could show that the harassment was motivated by a general hostility to the presence of a particular gender in the workplace. Id. Third, a plaintiff could show sex discrimination by contrasting how the harasser treated both sexes in a "mixed-sex workplace." Id. at 80-81. Other Circuits have noted that another way to make a same-sex sexual harassment claim would be to show that the harasser's conduct was motivated by a belief that the plaintiff did not conform to the stereotypes of his or her gender. Bibby v. Philadelphia Coca Cola Bottling Co., 260 F.3d 257, 262-63 (3d Cir. 2001) cert. denied, 534 U.S. 1155 (2002); Nichols v. Azteca Restaurant Enterprises, Inc., 256 F.3d 864, 869, 874-75 (9th Cir. 2001).

Plaintiff's claim in this case appears confined to the first type of proof described above. This case does not involve a

plaintiff who failed to conform to gender stereotypes. It does not involve a mixed-sex workplace. There is no evidence as to how Captain Ritter conducted himself in front of female employees. Nor is there evidence that Captain Ritter was motivated by a general hostility to plaintiff's gender in the workplace. Indeed, the evidence is that Captain Ritter did not treat other male employees in the fashion he treated plaintiff.

So, for plaintiff to demonstrate sex discrimination in this case, the evidence must be sufficient for a reasonable jury to find that Captain Ritter was motivated by a sexual desire in his comments and actions toward plaintiff. The evidence is lacking on this point. There is no credible evidence that Captain Ritter is homosexual or bisexual or that his actions toward plaintiff were motivated by sexual desire or sexual prejudice. Reading the record in a light most favorable to plaintiff, we assume that plaintiff was subjected to multiple incidents of harassment. These crude efforts at jocularity or domination do not appear appropriate even in an all-male work environment. The record is barren of proof, however, that Ritter's conduct, albeit improper, was motivated by sexual desire or sexual prejudice. Cf., Budenz v. Sprint Spectrum, L.P., 230 F.Supp.2d 1261, 1273-74 (D.Kan. 2002) (plaintiff's belief that harasser might desire a homosexual experience because he continued to rub plaintiff's shoulders after plaintiff asked him to stop and because harasser said he had friends with "alternative

lifestyles" does not amount to credible proof that the harasser is a homosexual or that his conduct is motivated by sexual desire); Dick, 397 F.3d at 1266 (summary judgment denied when sexual desire in same-sex case could be proven by touching of an intimate part of plaintiff's body, same-sex sexual conduct with other people in the workplace and evidence that alleged harassers were homosexual). Therefore, summary judgment for defendant is warranted.

Severity of the harassment

Summary judgment for defendant is also warranted because the record does not support a finding that the misconduct alleged in this case created an abusive working environment. As already noted, Title VII prohibits subjecting an employee to a hostile work environment because of the employee's sex. See Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). Whether a work environment is hostile must be evaluated based upon all of the circumstances, which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993). A hostile environment claim can be proven if the evidence shows that the conduct of a supervisor or co-worker unreasonably interfered with an individual's work performance or created an intimidating, hostile or offensive work environment. Wright-

Simmons v. City of Oklahoma City, 155 F.3d 1264, 1269 (10th Cir. 1998) (a case alleging a racially hostile work environment). A plaintiff must show both that the conduct was "'severe or pervasive enough to create . . . an environment that a reasonable person would find hostile or abusive,' and that he 'subjectively perceive[d] the environment to be abusive.'" Id., quoting Harris, 510 U.S. at 21. We remain mindful that Title VII is not intended to be interpreted as enforcing a general code of civility in the workplace. Dick, 397 F.3d at 1263. We are also mindful that Title VII does not reach "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." Oncale, 523 U.S. at 81.

From an objective viewpoint, the court does not believe a reasonable jury could find from the evidence in the record that the harassment which occurred was so severe or pervasive as to create an abusive working environment. The incidents of alleged harassment in this case are relatively frequent over a four-month period, but not so constant as to be abusive, particularly considering the work schedule. The incidents of alleged harassment also were not severe. No physical threats were involved. No touching or exposure of intimate body parts occurred. No explicit sexual advances were made. Pornography was not involved. There were clearly incidents of sarcasm, ridicule and offensive utterances, but nothing happened which was so humiliating as to be

abusive. Finally, while there is evidence that the harassment had an emotional effect upon plaintiff and made it undesirable for plaintiff to go to work, the incidents of harassment did not unreasonably interfere with plaintiff's work performance.

The court has reviewed several cases where hostile work environment claims have been dismissed. Plaintiff's claim of harassment does not appear to be significantly more severe than these cases. Cf., Bowman v. Shawnee St. Univ., 220 F.3d 456, 462-64 (6th Cir. 2000) (over three years, female supervisor rubbed male plaintiff's shoulder, at a party grabbed plaintiff's buttocks and told him she controlled his "ass," suggested he join her in a hot tub, told him to swim at her pool without his girlfriend, put her hands on plaintiff and pushed him out of a door, and committed other nonsexual acts of harassment); Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) cert. denied, 529 U.S. 1068 (2000) (over 16 months, male supervisor rubbed hip against female plaintiff's hip while touching her shoulder, sniffed around plaintiff's groin, constantly followed plaintiff around office and stared at plaintiff, and responded to plaintiff's complaint that she just wanted to work by saying "I'm getting fired up, too"); Shepherd v. Comptroller of Public Accounts, 168 F.3d 871, 872-75 (5th Cir. 1999) (co-worker made comments about plaintiff's nipples and thighs, touched plaintiff's arm several times, rubbed plaintiff's shoulder and arm, made several attempts to look down

plaintiff's dress, and jokingly suggested that plaintiff could sit on co-worker's lap at meetings on two occasions); Adusumilli v. City of Chicago, 164 F.3d 353, 357 (7th Cir. 1998) cert. denied, 528 U.S. 988 (1999) (teasing plaintiff, making sexual jokes, commenting on her low-neck tops, repeatedly staring at her breasts, and four incidents of touching her arm, fingers or buttocks); Penry v. Federal Home Loan Bank, 155 F.3d 1257, 1261-63 (10th Cir. 1998) cert. denied, 526 U.S. 1039 (1999) (many occasions of needless touching, several sex-based comments, asking plaintiff to work in supervisor's hotel room); Black v. Zaring Homes, Inc., 104 F.3d 822, 823-24 (6th Cir.) cert. denied, 522 U.S. 865 (1997) (repeated sex jokes over four-month period and other sexual comments); Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745 (4th Cir.) cert. denied, 519 U.S. 818 (1996) (allegations of same-sex harassment in the nature of sexual comments, physical contact (bumping) on occasions, a congratulatory kiss in a receiving line and staring in the bathroom); Baskerville v. Culligan Internat'l Co., 50 F.3d 428, 430-31 (7th Cir. 1995) (over seven months male supervisor made eight veiled comments which female plaintiff interpreted as exhibiting a sexual desire and once said he was lonely and made a gesture indicating masturbation); Wells v. Coca-Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993) (male supervisor asked female plaintiff for dates, put hand on shoulder several times, placed "I love you" signs in working area and attempted to kiss plaintiff); Pfullman v.

Texas Department of Transportation, 24 F.Supp.2d 707 (W.D.Tex. 1998) (three incidents - one where male co-worker sat on male plaintiff's lap and said it felt good, another involving insinuations of fellatio, and a third incident which contained a reference to sodomy).

We conclude that a reasonable jury could not find that there was an abusive work environment under the law governing Title VII cases.

CONSTRUCTIVE DISCHARGE

Summary judgment against plaintiff's constructive discharge claim is warranted for the reasons mentioned above and for another reason. A constructive discharge occurs if an employer's discriminatory acts make working conditions so difficult that a reasonable person in the plaintiff's position would feel compelled to resign. Ammon v. Baron Automotive Group, 270 F.Supp.2d 1293, 1312 (D.Kan. 2003). A plaintiff must show that he or she had no choice but to quit. Yearous v. Niobrara County Memorial Hospital, 128 F.3d 1351, 1356 (10th Cir. 1997) cert. denied, 523 U.S. 1074 (1998); Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir. 1992) cert. denied, 509 U.S. 923 (1993); Ammon, 270 F.Supp.2d at 1312; Lintz v. American General Finance, Inc., 50 F.Supp.2d 1074, 1084 (D.Kan. 1999). These cases hold that a plaintiff must demonstrate that he or she explored options short of resignation or that such exploration would have been futile. The record upon

summary judgment indicates that plaintiff did not consider the option of working for a supervisor other than Captain Ritter. The court has no reason to believe that a reasonable person would have considered this option to be intolerable or even to be a punishment for complaining about harassment. The record demonstrates that plaintiff could not prove constructive discharge under the law of the Tenth Circuit. Therefore, summary judgment should be granted against plaintiff's constructive discharge claim.

CONCLUSION

For the above-stated reasons, defendant's motion for summary judgment shall be granted. This action renders plaintiff's motion for partial summary judgment moot.

**IT IS SO ORDERED.**

Dated this 26th day of September, 2006 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge